**SOMERSET MARINE, INC., Plaintiff,**

v.

**FORESPAR PRODUCTS CORP.,
et al. Defendants.**

**No. CV 93–1954 RG (Tx).**

United States District Court,
C.D. California.

March 25, 1994.

Walsh, Donovan, Lindh & Keech, Edward M. Keech, Elizabeth M. Miller, San Francisco, CA, for plaintiff Somerset Marine, Inc.

James D. Boughey, Eileen R. Ridley, Benjamin I. Tresser, Boughey, Garvie & Bushner, San Francisco, CA, for defendant Pacific Asian Enterprises, Inc.

Terence S. Cox, Kelly, Cox, Wootton, Griffin, Gill & Sherburne, San Francisco, CA, for defendant Fores Mfg. Corp. (incorrectly sued as Forespar Products Corp., Forespar Mfg. Corp. and Forespar.

Order Granting Defendants' Motions For Summary Judgment and Denying PAE's Request for Rule 11 Sanctions.

GADBOIS, District Judge.

### I.

On May 6, 1990, the yacht JADEANTE's mast snapped and broke off, pulling the entire rigging into the sea. FAC ¶ 18. Fortunately, no one on board was injured, and the JADEANTE, which allegedly suffered $100,-000 in damages, was insured. The insurer's subrogee, plaintiff Somerset Marine, Inc. ("Somerset"), filed this suit against the mast manufacturer, defendant Fores Manufacturing Corp. ("Fores"), and the yacht manufacturers, Pacific Asian Enterprises, Inc., ("PAE"), and Tai Shing Yacht Building Co., Ltd., ("Tai Shing"), alleging claims for strict liability, negligence, and breach of warranty.

On January 31, 1994, this Court heard the summary judgment motions of defendants Fores and PAE.

### II.

This Court has jurisdiction under 28 U.S.C. § 1332.

### III.

A. *Warranty Claim.*

In its opposition papers, Somerset offered to dismiss its warranty claims. Therefore, defendants' motion for summary judgment is GRANTED, and Somerset's warranty claims are hereby DISMISSED.

B. *Strict Liability Claim.*

1. *East River Applies to Non–Commercial Vessels.*

Defendants contend that *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) bars recovery under a strict liability theory. The *East River* plaintiff sought repair costs and lost income when a turbine on

a supertanker malfunctioned. The Supreme Court held that under federal maritime law, plaintiff was not entitled to relief.

> [We] hold that a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself.

*East River*, 476 U.S. at 871, 106 S.Ct. at 2302. The Court rejected cases which allowed tort actions where the product placed others in danger or failed suddenly. *East River*, 476 U.S. at 870, 106 S.Ct. at 2302 ("Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law."). However, the Court specifically declined to determine whether a party can ever recover only economic damages in a maritime tort action. *East River*, 476 U.S. at 871 n. 6, 106 S.Ct. at 2302 n. 6. Coupled with the Court's frequent references to "commercial" relationships, this language led one district court to conclude that *East River* is confined to a *commercial* context. *Sherman v. Johnson & Towers Baltimore, Inc.*, 760 F.Supp. 499, 502 (D.Md. 1990) (distinguishing yacht purchased for personal use from commercial cargo ships). Plaintiff argues that this Court should follow *Sherman*, as any other interpretation of *East River* would render the term "commercial" mere verbiage.

Indeed, *Sherman* seems consistent with the rationale behind the *East River* rule. For instance, the Supreme Court seemed untroubled by eliminating tort remedies because parties in *commercial* transactions often have equal bargaining power, and can allocate risk adequately themselves. *East River*, 476 U.S. at 872–73, 106 S.Ct. at 2303 ("[W]e see no need to intrude into the parties' allocation of the risk."). The Court also seemed concerned by the "need to ... maintain a realistic limitation on damages" which could quickly mount in a commercial context.

*East River*, 476 U.S. at 871, 106 S.Ct. at 2302 ("[W]hen a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service."). However, since a non-commercial consumer ordinarily stands only to lose the value of the product, the Supreme Court's concern with wide-reaching liability seems less at stake here.

Several other courts reject *Sherman* and contend that *East River*'s rationale applies equally to consumer transactions. *Karshan v. Mattituck Inlet Marina & Shipyard, Inc.*, 785 F.Supp. 363, 365–66 (E.D.N.Y.1992); *Lewinter v. Genmar Industries, Inc.*, 1993 A.M.C. 939, 944–48 (Cal.Superior 1993); *Sisson v. Hatteras Yachts, Inc.*, 1991 WL 47543 (N.D.Ill.1991). These cases emphasize the Supreme Court's concern with keeping contract and product liability law separate, and note that an action for damage to the product itself remains "the essence of a warranty action" whether or not the product was used "commercially". *Karshan*, 785 F.Supp. at 366.

Furthermore, these cases note that the Supreme Court focused on the availability of insurance,—and *non*-commercial vessels are also usually insured. *Karshan*, 785 F.Supp. at 366; *Sisson*, 1991 WL 47543 at *2. Moreover, unlike other contexts, little distinguishes a commercial purchaser of a maritime vessel from a consumer. Generally, even pleasure boat purchasers are sophisticated and perfectly capable of negotiating the terms of the vessel purchase.[1] Thus, *Karshan*, *Sisson*, and *Lewinter* discard the commercial/non-commercial distinction as useless and likely to lead to confusion. *Lewinter*, 1993 A.M.C. at 944–48 ("A manufacturer's expectation of, and entitlement to, the protection of *East River* should not, and cannot, turn on the purpose a downstream purchaser, with which the manufacturer had no dealing, had in purchasing the vessel.").

---

1. *But see Karshan*, 785 F.Supp. at 365 (noting that some consumers purchase $500,000 yachts by signing pre-printed boilerplate agreements).

This Court chooses to follow *Karshan, Sisson,* and *Lewinter* and therefore finds that *East River* applies in a non-commercial context. By doing so, this Court does not erode a manufacturer's incentive to produce safe vessels—manufacturers remain accountable for damage done to persons or to other property, which, according to the Supreme Court, is sufficient. *East River,* 476 U.S. at 871, 106 S.Ct. at 2302 ("The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary ... When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.").

Therefore, since Somerset has failed to offer evidence of damage to anything other than the JADEANTE, defendants' motion for summary judgment is GRANTED, and Somerset's strict liability claims are DISMISSED.

### C. *Post–Manufacture Negligent Failure to Warn Claim.*

Plaintiff contends that *East River* does not bar post-manufacture negligent failure to warn claims. *See, e.g., Nicor Supply Ships Assocs. v. General Motors Corp.,* 876 F.2d 501, 503 (5th Cir.1989); *McConnell v. Caterpillar Tractor Co.,* 646 F.Supp. 1520, 1526 (D.N.J.1986). Even if Somerset is correct, it must demonstrate a genuine issue of material fact in order to avoid summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). At oral argument, Somerset conceded that it could not do so. Therefore, this Court GRANTS defendants' motions for summary judgment on plaintiff's post-manufacture negligent failure to warn claim.

### D. *Defendant's Request for Sanctions.*

PAE's request for Rule 11 sanctions is hereby DENIED, since Somerset made a good faith argument simply by citing *Sherman.*

### IV.

Defendants' motions for summary judgment on Somerset's warranty, strict liability, and post-negligent failure to warn claims are hereby GRANTED. Defendant PAE's motion for Rule 11 Sanctions is hereby DENIED.

**IT IS SO ORDERED.**